IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RONALD BANKS, et al. | * |
|     Plaintiff, | * |
|         v. | Civil Action No.: RDB-13-2294 |
| WET DOG, INC., et al. | * |
|     Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The Plaintiffs Julianna Anderson, Warrington Baker, Ronald Banks, Linwood Collins, Patrick Dixon, William Fletcher, Wayne Gross, Michael Johnson, David Jones, Shawn Palmer, John Petrovich, Antonio Roberts, and Scott Wetzel ("Plaintiffs") assert claims for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207 & 215, and the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-415, against the Defendants Wet Dog, Inc., Wet Dog II, LLC, and David Donovan ("Defendants"). Presently pending are the Defendants' Motion to Dismiss Class Action Allegations and to Dismiss Counts II, IV & V of the Amended Complaint (ECF No. 25).[1] The parties' submissions have been reviewed and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Defendants' Motion to Dismiss Class Action Allegations and to Dismiss Counts II, IV & V of the Amended Complaint (ECF No. 25) is DENIED.

---

[1] Also pending is the Plaintiffs' Motion for Conditional Certification (of a collective action pursuant to the Fair Labor Standards Act) and to Facilitate Notification and Identification of Similarly Situated Employees (ECF No. 28). This Motion will be not be addressed at this time.

BACKGROUND

This Court accepts as true the facts alleged in the Amended Complaint (ECF No. 25). *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Defendant Wet Dog, Inc. is a car wash business located in Easton, Maryland. Wet Dog II, LLC is also a car wash, located in Cambridge, Maryland. Defendant Donovan owns and operates Wet Dog, Inc. and Wet Dog II, LLC. The Plaintiffs are Maryland residents who have worked at the Easton or Cambridge locations, or both. All named Plaintiffs worked as car washers and detailers. Plaintiff Dixon had certain additional responsibilities such as opening and closing, and ordering supplies. All of the Plaintiffs worked for Wet Dog at some point between January of 2011 and the present. Some Plaintiffs started working for the Defendants as early as 2006 and some still work for Wet Dog. Others had shorter stints of employment and do not work for Wet Dog anymore. The Plaintiffs allege that at all times relevant to the claims in this case, Donovan supervised the administration of Wet Dog, set the Plaintiffs' schedules, actively managed and directed the Plaintiffs, determined their hours worked, and made all decisions with respect to Plaintiffs' rate and method of pay. *See* Am. Compl. ¶¶ 1-34, 61-62.

The Plaintiffs were hourly employees, earning between $7.25 and $9.00 per hour. They received one free car wash per month, and were also allowed to cash their paychecks at work. The Defendants also state that their employees received tips from customers. However, the Plaintiffs allege that they routinely worked over forty hours per week, and at times as many a sixty hours a week, but were not paid overtime. They further allege that in January of 2011, the Defendants enacted a policy whereby the Plaintiffs would only be allowed to "clock in" when they were actually washing a car, and were required to clock out

when finished washing a particular car. This resulted in the Plaintiffs punching in and out throughout the day. However, the Plaintiffs are required to stay on the premises during time off the clock. They allege that some employees were terminated for failing to abide by these rules. Therefore, the Plaintiffs allege that although they worked nine to ten hours per day, they were not paid for a significant amount of this time. *See* Am. Compl. ¶¶ 37-49.

Furthermore, the Plaintiffs allege that they are routinely required to clock out at 5:30 p.m., but spend up to an hour a day cleaning up after they punch out, for which they are not paid. They are also charged $10 per paycheck for the towels they use to wash the cars. The Plaintiffs allege that the Defendants routinely edit employees' records in the time clock system to reduce the number of hours credited to the Plaintiffs. In addition, the Defendants hold bi-weekly meetings, which the Plaintiffs are required to attend without pay for their time. The Plaintiffs raised concerns about these practices at the bi-weekly meetings, but the Defendants continued to withhold wages allegedly owed. *See* Am. Comp. ¶¶ 50-54.

The Plaintiffs filed suit in this Court in August of 2013. Upon receiving notice of the Complaint, Defendant Donovan began making inappropriate remarks to certain employees who are named Plaintiffs. Later the same month, he cursed at Plaintiffs Fletcher and Palmer, and in October of 2013, he allegedly embarrassed Plaintiff Roberts at a work party by introducing him as the one "suing Wet Dog." On one occasion in September of 2013, he yelled at Plaintiff Fletcher, and when Fletcher asked Donovan to stop, Donovan responded that because Fletcher was a "minimum wage worker," he could talk to him "however he wants." Donovan made similar comments to Plaintiff Roberts, telling him that he could talk

to him "however he wants," that he "never liked him in the first place," and that he "will never amount to anything." *See* Am. Compl. ¶¶ 55-57, 59, 64.

In addition to this alleged inappropriate verbal conduct, the Plaintiffs allege that Donovan changed his employment practices after the lawsuit was filed. They allege that he implemented new policies after they filed the lawsuit, and fired Plaintiff Fletcher on September 20, 2013 based on "some perceived violation of some previously unenforced company policy . . . pertain[ing] to the issuance of customer receipts." Around the time of the company party in October of 2013, Donovan demanded the Dixon return the keys he used to open and close the car wash, stating that "he was obviously no longer invested in the company" based on his participation in the lawsuit. Soon after, Donovan told Plaintiff Roberts that he "can't get any more free car washes." Then, Donovan told Roberts, Dixon, and Palmer that they could no longer cash their paychecks at the car wash. Employees not involved in the lawsuit were still allowed to cash their checks at work. *See* Am. Compl. ¶¶ 58-63.

After the Plaintiffs filed their Complaint, the Defendants moved to dismiss. The Defendants then consented to the filing of the Amended Complaint (ECF No. 24). In the Amended Complaint, the Plaintiffs state that they may maintain their suit as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) because there are other employees who are similarly situated to them with regard to their allegations of unlawful employment practices by the Defendants. They also assert that they bring their claims on behalf of a potential class of Defendants' employees pursuant to Rule 23 of the Federal

Rules of Civil Procedure. The Defendants filed the pending Motion to Dismiss Class Action Allegations and to Dismiss Counts II, IV & V of the Amended Complaint (ECF No. 25).[2]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999))). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439

---

[2] As noted above, the Plaintiffs' motion for conditional certification of a collective action pursuant to the Fair Labor Standards Act (ECF No. 28) will be separately addressed.

(4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.*; *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) ("The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." (citing *Iqbal*, 556 U.S. at 678.)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### A. Class Action Allegations

The Defendants move to dismiss the class action allegations in the Amended Complaint, arguing that the Plaintiffs have failed to allege sufficient facts to pursue class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Pursuant to Rule 23, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

6

Fed. R. Civ. P. 23(a). In addition, Rule 23 requires that the questions of law or fact common to class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The Defendants argue that because the Plaintiffs have not plausibly pled that they are so numerous, or that the common issues raised in their claims predominate over any question affecting only some individual members, the stringent requirements for class certification pursuant to Rule 23 are not met.

The Defendants' arguments are premature. They ask this Court to decide now that this case can never be maintained as a class action. Normally, courts reserve their analysis of the propriety of a proposed class until the plaintiffs move for class certification. *See Clark v. McDonald's Corp.*, 213 F.R.D. 198, 218 n.3 (D.N.J. 2003) ("A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"). However, the Plaintiffs have not yet sought certification of a class pursuant to Rule 23. At this stage, they have adequately alleged facts to show that the requirements of Rule 23 could be met such that dismissal is unwarranted. Although there are only thirteen Plaintiffs, they plausibly allege that there are other employees of Wet Dog who were affected in the same way by the Defendants alleged wage and hour law violations. Such additional employees, combined with the named Plaintiffs, may be numerous enough to constitute a class. Moreover, the allegations in the Amended Complaint state that, despite differences in the individual situations of some employees, there are certain issues shared by all of the named Plaintiffs. In particular, the crux of the allegations in the Amended Complaint is that all Wet Dog employees were required to follow the Defendants' clocking-in-and-out procedure,

were not paid unless actively washing a car, and were required to stay on the premises while punched out. Although some Plaintiffs have alleged that they were retaliated against while other have not, it would be premature to decide now whether these individual issues predominate over common questions of law and fact with regard to the payment of wages. In contrast to the cases cited by the Defendants where courts have summarily dismissed class action allegations, *see, e.g. Ardino v. Lyons, Doughty & Veldhuis, P.C.*, No. 11-0848 (NLH/KMW), 2011 WL 6257170, at *14 (D.N.J. Dec. 14, 2011) (granting motion to dismiss class action relief for proposed of class of all New Jersey debtors who received collection notices from the defendant because claim was dependent on fact-sensitive inquiry into settlement discussions with individual debtors), the Amended Complaint is not nearly so devoid of a basis for a class action as to warrant dismissal before the Plaintiffs even move for class certification.[3]  Accordingly, the Defendants' Motion to Dismiss Class Allegations will be denied.

### B.  Maryland Wage and Hour Law Claims – Counts II & IV

The Defendants also argue that the Plaintiffs' claims for violations of the Maryland Wage and Hour Law in Counts II & IV should be dismissed because they are "mooted or preempted by the identical FLSA claims asserted in Counts I & III." As this Court has previously noted, "[w]hile the Fourth Circuit has not directly addressed the question of whether the FLSA preempts state statutory regulation of overtime wages, courts in this district and other circuits have addressed the issue and have held that it does not." *See, e.g.*,

---

[3] If the Plaintiffs elect to move for class certification, as well as for conditional certification of a collective action, any possible issues that arise with respect to a hybrid action under both the FLSA and Rule 23 will be addressed at the appropriate juncture.

*Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 671 (D. Md. 2011) (citing, among others, *Hoffman v. First Student, Inc.*, No. AMD-06-1882, 2009 WL 1783536 *8-9 (D. Md. June 23, 2009)). There is nothing in the Fair Labor Standards Act that prohibits states from creating a parallel scheme to protect employees' wage rights, or that prevents employees from maintaining FLSA claims and MWHL claims in the same suit. Of course, ultimately, the Plaintiffs will not be allowed a double recovery for the same injury, but they may be entitled to additional remedies afforded by the MWHL such as attorneys' fees, interest, costs, and "any other relief deemed appropriate by the court." *Id.* Therefore, the Plaintiffs' Maryland statutory wage claims are not preempted by the FLSA. Accordingly, the Defendants' Motion to Dismiss Counts II & IV of the Amended Complaint will be denied.

### C. FLSA Retaliation

Finally, the Defendants move to dismiss the retaliation claim under the Fair Labor Standards Act, 29 U.S.C. § 215 in Count V. Specifically, the Defendants argue that those four Plaintiffs have not alleged any adverse employment actions that could plausibly support a *prima facie* retaliation claim. An employment action is materially adverse if "it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (analyzing adverse employment actions under Title VII of the Civil Rights Act); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342-43 (4th Cir. 2008) ("[A] plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action 'that would have been materially adverse to a reasonable employee' because the 'employer's actions . . . could

well dissuade a reasonable worker from making or supporting a charge of discrimination.'" (quoting *Burlington Northern*, 548 U.S. at 68)).

In this case, the Plaintiffs have alleged that Defendant Donovan took adverse employment actions against Fletcher, Dixon, Roberts, and Palmer. They allege that Fletcher was terminated by Donovan for violating a policy that was only implemented or enforced until after the lawsuit was filed. Donovan is also alleged to have taken away Dixon's managerial responsibilities because of his participation in the lawsuit. As to Roberts, Dixon, and Palmer, Donovan no longer allowed them to cash their paychecks at the car wash, while other employees who are not involved in this case are still allowed this service.[4] Each of these alleged actions by Donovan could reasonably dissuade a worker from filing a lawsuit alleging wage law violations. Therefore, the Plaintiffs have met the standard set forth in *Burlington Northern & Santa Fe Railway Co. v. White* by pleading adverse employment actions in support of their retaliation claims. Accordingly, the Defendants' Motion to Dismiss Count V will be denied.

---

[4] Additionally, while the alleged incidents of yelling, cursing, and insulting may not, by themselves, be adverse employment actions, those allegations may nevertheless be relevant to the Plaintiffs' claims of retaliation.

CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss Class Action Allegations and to Dismiss Counts II, IV & V of the Amended Complaint (ECF No. 25) is DENIED.

A separate Order follows.


Dated:  August 28, 2014                             /s/                                    
                                              Richard D. Bennett
                                              United States District Judge